UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KERRY KOTLER,

      Plaintiff,

    -v-

C. BOLEY, CORRECTION OFFICER; J.
CARRERAS, SERGEANT; K. CHAUVIN,
SENIOR COUNSELOR; AND S. REAMS,
INMATE GRIEVANCE PROGRAM
SUPERVISOR,

      Defendants.

No. 17-CV-239 (KMK)

OPINION & ORDER

Appearances:

Kerry Kolter
Bellport, NY
*Pro se Plaintiff*

Jennifer R. Gashi, Esq.
Office of the New York State Attorney General
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

  Plaintiff Kerry Kotler ("Plaintiff"), an inmate at Fishkill Correctional Facility ("Fishkill"), filed this pro se Action, under 42 U.S.C. § 1983, against C. Boley, Correction Officer ("Boley"); J. Carreras, Sergeant ("Carreras"); K. Chauvin, Senior Counselor "SORC" ("Chauvin") and S. Reams, Inmate Grievance Program Supervisor ("Reams") (collectively "Defendants"), alleging violations of his constitutional rights under the First and Fourteenth Amendments. (Compl. (Dkt. No. 2).) Before the Court is a Motion To Dismiss on behalf of Defendants Boley, Carreras, and Reams pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

---

[1] Chauvin is named in the lawsuit as a Defendant, however she remains unserved and unrepresented.

(Defs.' Mot. To. Dismiss Pursuant to Rule 12(b)(6) ("Defs.' Mot.") (Dkt. No. 21).) For the reasons to follow, the Motion is granted.

I. Background

A. Factual Background

The following facts are drawn from Plaintiff's Complaint and Plaintiffs Opposition to the Motion to Dismiss (Pl.'s Opp'n to Defs.' Mot. To Dismiss ("Pl.'s Opp'n") (Dkt. No 26)), and are taken as true for the purpose of resolving the instant Motion. During the time of the alleged events, Plaintiff was a convicted prisoner at Fishkill.

On June 3, 2016, Plaintiff appeared before the Inmate Grievance Resolution Committee ("IGRC") regarding a grievance he submitted. (Compl. ¶ 2.) That same day, another inmate, whom Plaintiff alleges he assisted in writing a grievance, also went before IGRC. (*Id.* ¶ 3.) The next day, following Plaintiff's appearance before the IGRC, Carreras directed Boley to conduct a search of Plaintiff's cell. (*Id.* ¶ 4.) During this search, Boley informed Plaintiff that "the search was the result of an enemy stating Plaintiff was 'advocating for other inmates.'" (*Id.* ¶ 7.) Boley located a pair of tweezers that had been broken and altered, which "would normally be considered a minor item of contraband." (*Id.* ¶ 8.) Carreras thereafter instructed Boley to issue a misbehavior report related to the tweezers, and Plaintiff was "immediately confined . . . to the special disciplinary unit." (*Id.* ¶ 12.) In the misbehavior report, Boley "falsely claimed that the piece of the tweezers had been sharpened to a 'razor[']s edge,'" (*id.* ¶ 13), and, as a result, Plaintiff was "confined to a special disciplinary unit for 90 days." (Pl's Opp'n ¶ 10.)

During Plaintiff's confinement in the special disciplinary unit, he was subject to a Disciplinary Hearing held between June 10, 2016 and July 25, 2016 and presided over by Chauvin. (Compl. ¶ 18.) Plaintiff alleges that "Chauvin conducted the hearing in a manner that

2

was bias[ed] and unfair," (*id*. ¶ 19), and that Boley and Carreras falsely testified in order to provide "the requisite justification for having conducted [the] search" in the first place. (Pl's Opp'n ¶ 11). Specifically, Boley testified that the search was "random," while Carreras testified that the search was a result "of information . . . advising him that [P]laintiff was in possession of 'a weapon.'" (Compl. ¶ 15.) Moreover, Chauvin allowed other unnamed staff to interfere with the proceedings, (*id*. ¶ 20), including, *inter alia*, allowing those staff to "direct what evidence was and was not to be deemed relevant," (*id.* ¶ 21), allowing Carreras to "tell [Chauvin] that questions she asked him, at [P]laintiff's request, were not relevant," (*id.* ¶ 22), denying Plaintiff's request to call a witness, Sergeant Guarino, the supervisor of his housing area, *(id.* ¶¶ 24–26), attempting to convince Plaintiff to plead guilty, (*id.* ¶ 26), and then offering Plaintiff a deal wherein she would "impose a penalty" that would get him "immediate[ly] release[d] from the box," (*id.* ¶ 27). Chauvin also had "off the record conversations" that "were improper and prohibited." (*Id.* ¶ 31.)

After the search and hearing, Plaintiff "repeatedly attempted" to file grievances against Defendants. (*Id*. ¶ 48.) However, Reams, the Supervisor of the Inmate Grievance Program, made it "[e]xtremely difficult for [him] to file a grievance," and "orchestrated [a] concerted effort to keep Plaintiff from securing relief and exhausting his remedies." (*Id*. ¶ 49.) Plaintiff then filed this Complaint, alleging that the actions of Defendants "in searching [his] [cell], giving false testimony . . . , conducting the hearing in an unfair and bias[ed] manner, and in frustrating [his] efforts to the process due through the inmate grievance program," were retaliatory actions based upon Plaintiff's filing of a grievance, as well as his assisting another inmate with the submission of that inmate's grievance. (*Id.* ¶ 51.)

B.  Procedural History

Plaintiff filed the Complaint on January 11, 2017.  (*See* Compl.)  Plaintiff's request to proceed in forma pauperis was granted on April 28, 2017.  (*See* Dkt. No. 5.)  The Court issued an Order of Service on May 4, 2017, directing the U.S. Marshals to effect service on the named Defendants.  (*See* Dkt. No. 7.)  On August 28, 2017, Defendants submitted a Letter Motion for Extension of Time to File an Answer, naming only Boley, Carreras, and Reams as defendants because Chauvin "to date . . . remains unserved and unrepresented."  (*See* Letter from Jennifer Gashi, Esq. to Court (Aug. 28, 2017) (Dkt. No. 13).)  The Court granted the request and, on September 6, 2017, the Court set the answer date for September 30, 2017.  (*See* Dkt. No. 16.)  On September 14, 2017, Defendants filed a letter seeking leave to file a Motion To Dismiss the Complaint.  (*See* Letter from Jennifer Gashi, Esq. to Court (Sept. 14, 2017) (Dkt. No. 17).)  The Court set a briefing schedule, (*see* Dkt. No. 19), and Defendants thereafter filed their Motion to Dismiss and accompanying papers on October 30, 2017, (*see* Dkt. Nos. 20–21).  On January 16, 2018, Plaintiff filed an Opposition to the Motion, (Pl.'s Opp'n), and Defendants filed their Reply on January 19, 2018, (Defs.' Reply in Supp. of Mot. To Dismiss ("Defs.' Reply") (Dkt. No. 27)).

## II. Discussion

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). However, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

### B. Analysis

#### 1. First Amendment Retaliation Claim

Plaintiff's Complaint alleges that Defendants Boley and Carrera retaliated against him for having "exercised protected speech in filing earlier grievances . . . and/or as a result of [P]laintiff advising and assisting another inmate with the submission of a grievance." (Compl. ¶ 51.)

A plaintiff asserting a First Amendment retaliation claim must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks omitted).

6

"[B]ecause virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act," the Second Circuit has instructed district courts to "approach prisoner retaliation claims with skepticism and particular care." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (internal quotation marks omitted); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." (internal quotation marks omitted)). Accordingly, First Amendment retaliation claims brought by prisoners must "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan,* 794 F.3d at 295 (internal quotation marks omitted).

Plaintiff's filing of a grievance is protected conduct and therefore meets the first prong of the inquiry. *See id.* at 294 ("It is well established that 'retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.'" (quoting *Henderson*, 89 F.3d at 80)); *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir. 1988) ("[I]ntentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that [§] 1983 is intended to remedy." (internal quotation marks and alterations omitted)); *Baskerville v. Blot*, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (noting that a "prisoner's filing of a grievance" and "the filing of a lawsuit" are "constitutionally protected activit[ies]").

Although Plaintiff has adequately alleged that he engaged in protected conduct, he has failed to allege that Defendants took an "adverse action" against him in retaliation for that conduct. An action qualifies as an "adverse action" for purposes of a retaliation claim only if the action would "deter a prisoner of ordinary firmness from vindicating his or her constitutional

7

rights through the grievance process and the courts." *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004); *see also Muhammad v. Jenkins*, No. 12-CV-8525, 2013 WL 5225573, at *9 (S.D.N.Y. Sept. 13, 2013) (same).

Here, Plaintiff's retaliation claim rests on the fact that he, and a fellow inmate, appeared before the IGRC on June 3, 2016, and, the next day, Carreras ordered Boley to conduct the cell search. (Compl. ¶ 4.) However, the Supreme Court has held that an inmate's cell can be searched at any time because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, [the] . . . proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Post-*Hudson*, courts in the Second Circuit have reasoned that because "a prisoner has no reasonable expectation of privacy in his or her prison cell . . . a search of an inmate's cell, even for retaliatory reasons, . . . does not implicate a constitutional right." *Battice v. Phillip*, No. 04-CV-669, 2006 WL 2190565, at *7 (E.D.N.Y. Aug. 2, 2006) (collecting cases); *see also Harnage v. Brighthaupt*, No. 12-CV-1521, 2016 WL 10100763, at *6 (D. Conn. June 3, 2016) (holding that "even if [the plaintiff] could demonstrate a retaliatory motive for the search, his claim would be legally insufficient," because a "retaliatory cell search is insufficient to support a First Amendment retaliation claim"), *aff'd*, 720 F. App'x 79 (2d Cir. 2018); *Carl v. Griffin*, No. 08-CV-4981, 2011 WL 723553, at *5 (S.D.N.Y. Mar. 2, 2011) ("A cell search is not considered to be an adverse action.") (internal quotation marks omitted); *McClenton v. Menifee*, No. 05-CV-2844, 2009 WL 195764, at *4 (S.D.N.Y. Jan. 12, 2009) ("Courts in this district have held that a search of an inmate's cell, even if retaliatory, is insufficient to establish a First Amendment retaliation claim."); *Salahuddin v. Mead*, No. 95-CV-8581, 2002 WL 1968329, at *5 (S.D.N.Y. Aug. 26, 2002) ("Many courts in

this district have concluded that a retaliatory cell search is insufficient to support a First Amendment retaliation claim."); *Walker v. Keyser*, 98-CV-5217, 2001 WL 1160588, at *9 (S.D.N.Y. Oct. 2, 2001) ("Even retaliatory searches are not actionable under § 1983."); *Walker v. Goord*, 98-CV-5217, 2000 WL 297249, at *4 (S.D.N.Y. Mar. 22, 2000) (holding that searches of cells do not implicate a constitutional right even if the search is arbitrary or retaliatory); *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, *7 (S.D.N.Y. Nov. 17, 1997) ("[S]earches of cells implicate no constitutional rights, even if the search is arbitrary or retaliatory in nature."); *Higgins v. Artuz*, No. 94-CV-4810, 1997 WL 466505, at * 4 (S.D.N.Y. Aug. 14, 1997) ("Searches of cells implicate no protected constitutional rights, even if the search is arbitrary or retaliatory in nature."). Accordingly, a prisoner, whose cell can be searched at any time, has suffered no "special deprivation" that is "substantial enough" to deter an inmate of ordinary firmness from continuing to exercise his First Amendment rights where his or her cell is searched. *Salahuddin*, 2002 WL 1968329 at *3. Thus, because the cell searches "cannot be the basis of a retaliation claim," *Corley v. City of New York*, No. 14-CV-3202, 2017 WL 4357662, at *20 (S.D.N.Y. Sept. 28, 2017), the Court dismisses Plaintiff's retaliation claim against Boley and Carreras.[2]

---

[2] Plaintiff admits that the search revealed "a minor item of contraband, consisting of a broken and altered piece of a pair of tweezers," (Compl. ¶ 8), for which Plaintiff was issued a misbehavior report, (*id.* ¶ 12). To the extent that the Court were to assume that the misbehavior report and/or false testimony was the adverse action at issue, Plaintiff only alleges that "the search was the result of an enemy stating plaintiff was 'advocating for other inmates.'" (*Id.* ¶ 7.) Plaintiff does not allege that he himself filed a grievance against Boley or Carreras, nor does he allege that he "advocate[ed] for other inmates" against them. (*Id.*) "As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant." *Hare v. Hayden*, No. 09-CV-3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011); *see also Wright v. Goord,* 554 F.3d 255, 274 (2d Cir. 2009) (dismissing retaliation claim against a corrections officer when the only alleged basis for retaliation was a complaint about a prior incident by another correctional officer); *Jones v. Fischer*, No. 10-CV-1331, 2013 WL 5441353, at *21 (N.D.N.Y. Sept. 27, 2013) (dismissing the plaintiff's retaliation claims and noting such

2. <u>Due Process Claim</u>

Plaintiff alleges that Boley and Carreras deprived him of due process during his disciplinary hearing by providing false testimony, (*see* Compl. ¶ 15), while Reams "interfered with the grievance process," (*id.* ¶ 51). Regarding the process an inmate is due, a disciplinary hearing comports with due process when an inmate receives "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004). Plaintiff alleges that, as witnesses in the disciplinary hearing, "both defendants Boley and Carreras made specific claims . . . that they knew were false." (Compl ¶ 15.) Specifically, Boley testified that the search was "[r]andom," while Carreras testified the search was "the result of information . . . advising him that [P]laintiff was in possession of 'a weapon.'" (*Id.*) Plaintiff claims the testimony was false because "the search was not a legitimately selected 'random' search" and Carreras never received information before the search that "[P]laintiff had a 'weapon.'" (*Id.* ¶¶ 16–17.)

Assuming that Boley and Carreras indeed testified falsely, as the Court must at this stage, these allegations are insufficient to state a claim. The Second Circuit has determined that "a

---

"claims have been dismissed when they are supported only by conclusory allegations that the retaliation was based upon complaints against another officer"); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (finding the plaintiff failed to provide any basis to believe that a defendant would retaliate for a grievance in which the defendant was not named). This is coupled with the lack of any retaliatory statements or behaviors attributed to Defendants. Indeed, the extent of Plaintiff's allegations of retaliation related to the testimony and misbehavior report is that "[t]he actions of the defendants in . . . giving false testimony . . . were retaliatory in nature." (Compl. ¶ 51.) Given the general "skepticism and particular care" with which retaliation claims are to be treated, Plaintiff should take this into account if he files an amended complaint.

10

prison inmate has no general constitutional right to be free from being falsely accused." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *see also Bey v. Griffin*, No. 16-CV-3807, 2017 WL 5991791, at *7 (S.D.N.Y. Dec. 1, 2017) ("It is well settled that a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." (alteration and internal quotation marks omitted)). "Rather, the inmate must show something more, such as that he was deprived of due process during the resulting disciplinary hearing, or that the misbehavior report was filed in retaliation for the inmate's exercise of his constitutional rights." *James v. Gage*, No. 15-CV-106, 2018 WL 2694436, at *14 (S.D.N.Y. June 5, 2018) (internal quotation marks omitted). Plaintiff fails to satisfy this standard as to Boley and Carreras, because he does not allege that they testified in retaliation for Plaintiff attempting to exercise a constitutional right; rather, construing Plaintiff's submissions liberally, he contends that Boley and Carreras testified falsely to justify their search, as Plaintiff claims that the search was "not permitted . . . [a]s a matter of departmental policy." (Compl. ¶ 14.) In effect, Plaintiff alleges that Boley and Carreras testified the way that they did "[t]o satisfy the cause requirement [] and to justify the search," (*id.* ¶ 15), and not as a way to retaliate against Plaintiff. As explained above, Plaintiff does not have a constitutional right to be free from a cell search, thus lying to justify a search that itself was not unlawful does not make out a retaliation claim. *Compare Walker*, 2001 WL 1160588, at *9 ("[R]etaliatory searches are not actionable under § 1983.") *with Willey v. Kirkpatrick*, 801 F.3d 51, 65–66 (2d Cir. 2015) (reversing summary judgment on retaliation claim where the plaintiff alleged that the false reports were filed in response to his refusing to provide false information to police officers, which may be a constitutional right). In any event, in the absence of "specific and detailed factual allegations" that Boley and Carreras filed these reports in retaliation, the

11

Court approaches this claim with "skepticism and particular care" and thus dismisses the due process claims against them. *See James*, 2018 WL 2694436, at *14 (quoting *Dolan*, 794 F.3d at 295)).

Moreover, Plaintiff's claim that Defendant Reams violated his right to due process by "[interfering] with the grievance process . . . [and] [making] it extremely difficult for [P]laintiff to file a grievance in this matter," also fails. "[I]t is well-established that inmates do not have a protected liberty interest in the processing of their prison grievances." *Crichlow v. Fischer*, No. 15-CV-6252, 2017 WL 920753, at *7 (W.D.N.Y. Mar. 7, 2017); *see also Corley*, 2017 WL 4357662, at *7 ("[The p]laintiff did not have a liberty interest to access the [prison] grievance program that would provide a basis for a constitutional due process claim here."); *Njasang Nji v. Heath*, No. 13-CV-200, 2013 WL 6250298, at *6 (S.D.N.Y. Dec. 2, 2013) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim." (internal quotation marks omitted)); *Mimms v. Carr*, No. 09-CV-5740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011), *aff'd*, 548 F. App'x 29 (2d Cir. 2013) ("It is well-established that prison grievance procedures do not create a due-process-protected liberty interest."); *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("Prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment."). Consequently, "courts regularly dismiss claims brought to remedy alleged violations of inmate grievance procedures." *Martinez v. Schriro*, No. 14-CV-3965, 2017 WL 87049, at *3 (S.D.N.Y. Jan. 9, 2017) (alteration and internal quotation marks omitted). Thus, Plaintiff's due process claim regarding Reams' alleged interference in the grievance procedures fails as a matter of law.

III. Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted. This Opinion does not impact Plaintiffs outstanding claims against Defendant Chauvin. Moreover, because this is the first adjudication of Plaintiffs claims on the merits, the dismissal is without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within the amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, the original complaint. The amended complaint must contain all of the claims against all Defendants, including those who have not joined in this Motion to Dismiss. The Court will not consider factual allegations contained in supplemental letters, declarations, or memoranda. If Plaintiff fails to abide by the 30-day deadline, his claims against the moving Defendants may be dismissed with prejudice.

Moreover, Chauvin remains unserved and unrepresented. It appears that Chauvin was not served because she "retired," and is no longer able to be served at Fishkill. (Dkt. No. 18.) Accordingly, Defendants are instructed to inform the Court of the proper service address for Chauvin within 30 days of the issuance of this Opinion.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 20), and mail a copy of this Opinion to Plaintiff at the address listed on the docket.

SO ORDERED.

DATED: September 28, 2018
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE