UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KERRY KOTLER,

                       *Plaintiff*,

    v.

CORRECTIONS OFFICER C. BOLEY, *and*
SERGEANT J. CARRERAS,

                       *Defendants*.

No. 17-CV-239 (KMK)

ORDER & OPINION

Appearances:

Kerry Kotler
Rocky Point, NY
*Pro Se Plaintiff*

Kathryn E. Martin, Esq.
Elizabeth Barbanes, Esq.
Jennifer Rose Gashi, Esq.
White Plains, NY
New York State Office of the Attorney General
Counsel for Defendant

KENNETH M. KARAS, United States District Judge:

    Kerry Kotler ("Plaintiff"), proceeding pro se, brings this Action against Corrections Officer C. Boley ("Boley") and Sergeant J. Carreras ("Carreras") (together, "Defendants"), alleging violations of his First and Fourteenth Amendment rights. (*See* Am. Compl. (Dkt. No. 38).) Before the Court is Defendants' Motion for Summary Judgment (the "Motion"). For the reasons discussed below, the Motion is denied.

I. Background

A. Factual Background

The following facts are taken from Defendants' 56.1 Statement ("Defs' 56.1") (Dkt. No. 167), Plaintiff's 56.1 Response ("Pl's 56.1 Resp.") (Dkt. No. 177 at 1–3), Plaintiff's 56.1 Statement ("Pl's 56.1") (Dkt. No. 177 at 7–14), Defendants' 56.1 Response ("Defs' 56.1 Resp.") (Dkt. No. 183), and other admissible materials in the record. The facts are recounted "in the light most favorable to" Plaintiff, the non-moving Party. *See Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021). The facts as described below are undisputed unless otherwise noted.

At the time of the incident in question, June 4, 2016, Plaintiff was in the civil custody of the New York State Office of Mental Health and, as such, was incarcerated at Fishkill Correctional Facility ("Fishkill"), and Boley was a corrections officer and Carreras was a corrections sergeant, both at Fishkill. (Defs' 56.1 ¶¶ 1–4.) Plaintiff avers that he "help[ed] a lot of inmates write grievances and [he was] very active in advocating for others." (Decl. of Elizabeth Barbanes, Ex. C ("Pl's Dep. Tr.") (Dkt. No. 172-3) at 31:21–23.)

On June 4, 2016, Boley searched Plaintiff's cell. (Defs' 56.1 ¶ 10; Pl's 56.1 Resp. ¶ 10.) The Parties dispute the reason for the search—Defendants claim that Carreras "was ordered to supervise a search of Plaintiff's cell based on information that Plaintiff had a weapon in his cell," (Defs' 56.1 ¶ 8), while Plaintiff claims that, during the search, Boley "stated that the reason he was searching [Plaintiff's] [cell] was because someone said [Plaintiff] was 'advocating for other inmates,'" (Pl's 56.1 ¶ 27). Plaintiff points to an alleged conflict in Defendants' testimony regarding the cause of the search; Carreras testified that a confidential informant suggested there was a weapon in Plaintiff's cell, (*id.* ¶¶ 40–41), while Boley testified that the search was random, (*id.* ¶ 36). During his search, Boley discovered a pair of broken tweezers. (Defs' 56.1 ¶ 14.)

2

The Parties dispute whether one piece of the tweezers was "sharpened to a razor's edge." (*Compare id.* ¶ 15 *with* Pl's 56.1 Resp. ¶ 15.) Plaintiff admitted that the items were his, that he used the broken pieces "as a screwdriver to remove screws from such things as personal audio devices," and that he "would use a nail file to readjust the edge of the broken tweezer[s] to fit a screw." (Defs' 56.1 ¶¶ 21–24.) Plaintiff maintains that the discovery of a broken pair of tweezers "would and should not have resulted in any disciplinary action." (Pl's 56.1 ¶ 61.) Boley wrote an Inmate Misbehavior Report charging Plaintiff with possession of a weapon, an altered item, and unauthorized contraband. (*See* Decl. of Christopher Boley, Ex. A (Dkt. No. 169-1).)

A disciplinary hearing regarding the Inmate Misbehavior Report was conducted between June 10 and July 25, 2016. (Defs' 56.1 ¶ 25.) Plaintiff initially pled not guilty to possession of a weapon and contraband and guilty to possession of an altered item, (*see* Pl's Mem. in Opp. ("Pl's Opp") (Dkt. No. 178) at ECF 30), but later withdrew his guilty plea, (*see id.* at ECF 35–36). Defendants testified at the hearing. (*See* Pl's 56.1 ¶¶ 36, 40.) On July 26, 2016, Plaintiff filed a grievance dated July 23, 2016, concerning the June 4, 2016, search. (Defs' 56.1 ¶ 26; Pl's 56.1 ¶ 71.) The July 23 grievance was rejected as untimely by the Inmate Grievance Program Supervisor Sally Reams ("Reams"). (Pl's 56.1 ¶ 75; *see also* Decl. of Sally Reams (Dkt. No. 170) ¶ 9 (noting that a grievance must be filed within 21 days of the incident at issue).) Plaintiff filed a second grievance on July 27, 2016, that repeated the allegations of the July 23 grievance and added complaints about Reams' "ratification" of Defendants' June 4, 2016, misconduct, Reams' failure "to accept" the July 23 grievance, and her "failure to properly process [Plaintiff's] complaint as a 'staff conduct' grievance." (Pl's 56.1 ¶¶ 76–77.) Reams did not process the July 27 grievance as a staff conduct grievance; it was instead processed by the

3

Grievance Committee, which denied the July 27 grievance on August 10, 2016. (*Id.* ¶¶ 79–80.) Plaintiff appealed this determination to the Fishkill Superintendent, who issued a response dated August 19, 2016, which Plaintiff claims he did not receive. (*Id.* ¶¶ 81–83.)

On September 19, 2016, Plaintiff was transferred from Fishkill to Franklin Correctional Facility ("Franklin"). (*Id.* ¶ 84.) On November 21, 2017, Plaintiff was released to parole, from which he was discharged on July 11, 2018. (Defs' 56.1 ¶ 6.)

B.  Procedural Background

Plaintiff initiated this Action on January 11, 2017, against Boley, Carreras, Reams, and K. Chauvin ("Chauvin"), who presided over Plaintiff's disciplinary hearing at Fishkill. (*See* Compl. (Dkt. No. 2).) On September 28, 2018, the Court granted Defendants' motion to dismiss. (*See* 2018 Op. (Dkt. No. 29).) On January 9, 2019, Plaintiff filed an Amended Complaint. (*See* Am. Compl. (Dkt. No. 38).) On February 26, 2020, the Court granted Defendants' motion to dismiss with prejudice as to Boley, Carreras, and Reams, and without prejudice as to Chauvin, who remained unserved. (*See* 2020 Op. (Dkt. No. 46) 11.) On June 1, 2021, the Court dismissed Plaintiff's claims against Chauvin for failure to serve. (*See* Dkt. No. 58.) On November 7, 2022, the Second Circuit vacated the Court's 2020 Opinion and remanded the Action. *See generally Kotler v. Boley*, No. 21-1630, 2022 WL 4589678 (2d Cir. Sept. 30, 2022).

The Parties thereafter engaged in discovery, which closed on May 15, 2024. (*See* Dkt. No. 152.) On August 30, 2024, Defendants filed their Motion for Summary Judgment. (*See* Not. of Mot. (Dkt. No. 163); Defs' Mem. in Supp. ("Defs' Mem.") (Dkt. No. 164); Defs' 56.1.) On October 28, 2024, Plaintiff filed his Opposition. (*See* Pl's Opp.; Pl's 56.1 Resp.; Pl's 56.1; Pl's Suppl. Mem. (Dkt. No. 177 at 15–22).) On December 2, 2024, Defendants replied. (*See* Defs' Reply Mem. in Supp. ("Defs' Reply") (Dkt. No. 182); Defs' 56.1 Resp.)

4

## II. Discussion

A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia*, 17 F.4th at 354; *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration, citation, and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

5

U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (citation and quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Laby's. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should "consider only evidence that would be admissible at trial." *Latimer v. Annucci*, No. 21-CV-1275, 2023 WL 6795495, at *3 (S.D.N.Y. Oct. 13, 2023) (citing *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998)). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based

6

on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

"As a general rule, 'district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage.'" *Parker v. Fantasia*, 425 F. Supp. 3d 171, 183 (S.D.N.Y. 2019) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quotation marks omitted)). Where, however, the evidence presents "a question of 'he said, she said'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010) (quoting *Simpri v. City of N.Y.,* No. 00-CV-6712, 2003 WL 23095554, at *8 (S.D.N.Y. Dec. 30, 2003)); *see also Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017) (noting that "it is not the role of the [c]ourt at summary judgment to resolve [a] factual clash"); *Bale v. Nastasi*, 982 F. Supp. 2d 250, 258–59 (S.D.N.Y. 2013) (stating that "[w]here each side . . . tells a story that is at least plausible and would allow a jury to find in its favor, it is for the jury to make the credibility determinations and apportion liability, and not for the court"). And, even if the non-movant's evidence is "thin, [a non-movant's] own sworn statement is adequate to counter summary judgment." *Scott v. Coughlin*, 344 F.3d 282, 290–91 (2d Cir. 2003) (holding that "[t]he

7

credibility of [the plaintiff's] statements and the weight of contradictory evidence may only be evaluated by a finder of fact"); *Gunn v. Milani*, No. 20-CV-2681, 2024 WL 4124319, at *6 (S.D.N.Y. Sept. 9, 2024) (same).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988); *Mercado v. Div. of N.Y. State Police*, No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted).  Nonetheless, "proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) (italics and quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

B.  Failure to Exhaust

Defendants argue that, because Plaintiff did not fully exhaust his administrative remedies, they are entitled to summary judgment.  (*See* Defs' Mem. 14–17.)  Plaintiff counters that, "[b]y virtue of three separate grievances . . . filed, he has fully exhausted the administrative remedies that were available to him through the prison grievance process."  (Pl's Opp. 7.)  Plaintiff also argues that the Prison Litigation Reform Act ("PLRA") "does not, and did not apply to Plaintiff under federal law."  (*Id.* 8.)

8

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [Section] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). This requirement applies to "all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), "regardless of the relief offered through administrative procedures[,]" *Booth v. Churner*, 532 U.S. 731, 741 (2001). Moreover, the PLRA "requires proper exhaustion, which means using all steps that the prison grievance system holds out, and doing so properly. . . . Proper exhaustion demands compliance with a prison grievance system's deadlines and other critical procedural rules." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (alterations, citations, and quotation marks omitted) (emphasis in original). "Whether the PLRA's exhaustion requirement applies depends upon whether the plaintiff in an action is a 'prisoner confined in any jail, prison, or correctional facility' when the 'action [is] brought.'" *Gashi v. Cnty. of Westchester*, No. 02-CV-6934, 2005 WL 195517, at *4 (S.D.N.Y. Jan. 27, 2005). A prisoner under the PLRA "means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915.

While Plaintiff was confined pursuant to a civil custody order at the time this Action was initiated, (*see* Defs' 56.1 ¶¶ 1–2), he was not a prisoner under the PLRA. This is because a civil detainee is not considered a "prisoner" under the PLRA. *See Jones v. Cuomo*, 2 F.4th 22, 26 (2d

9

Cir. 2021); *Pratt v. Hogan*, No. 08-CV-1003, 2009 WL 87587, at *1 (N.D.N.Y. Jan. 9, 2009) (collecting cases). (*See* Pl's Opp.) Accordingly, "[s]ince Plaintiff was not a 'prisoner' for purposes of [the PLRA] when he filed the complaint in the instant [A]ction, . . . the exhaustion requirement of [the PLRA] does not apply." *Gashi*, 2005 WL 165517, at *6; *see also Cranford v. Narwarece*, No. 16-CV-954, 2017 WL 1231952, at *1 n.1 (E.D. Cal. Jan. 13, 2017) (advising a plaintiff that he need not exhaust his administrative remedies because, as a civil detainee, he "is not subject to the exhaustion requirement of the [PLRA]"); *Matherly v. Johns*, No. 11-CV-3020, 2012 WL 2953671, at *2 (E.D.N.C. July 19, 2012) (rejecting an argument that, under the PLRA, a civil detainee "exhaust his administrative remedies prior to seeking judicial review"); *Morales v. Geo Grp., Inc.*, No. 10-CV-601, 2011 WL 1542966, at *2 (M.D. Fla. Apr. 19, 2011) (noting that, "[a]s a civil detainee, [p]laintiff correctly recognize[d] that he was not *not* required to exhaust any administrative remedies prior to filing the instant action" (emphasis in original)); *Stewart v. Dunn*, No. 03-CV-469, 2006 WL 2583071, at *2 (E.D. Cal. Sept. 6, 2006) (rejecting a failure to exhaust argument because the PLRA did not apply "to plaintiff's claims because plaintiff [was] not a prisoner, but a civil detainee").

C.  Merits Analysis

Plaintiff asserts that Defendants violated his First Amendment right when Defendants searched his cell, drafted a false report based on circumstances that would not ordinarily result in discipline, and provided false testimony at the subsequent disciplinary hearing, all in retaliation for Plaintiff's filing grievances. (*See generally* Am. Compl.) Defendants argue that Plaintiff's First Amendment retaliation claim must fail because there is no triable issue of fact as to whether there was an adverse action and, independently, that Plaintiff would have been disciplined

10

regardless of any retaliatory motive on the part of Defendants. (*See generally* Defs' Mem.) The Court addresses these arguments in turn.

    1. First Amendment Retaliation

"A plaintiff asserting a First Amendment retaliation claim must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Galgano v. Cnty. of Putnam*, No. 16-CV-3572, 2024 WL 1623401, at *104 (S.D.N.Y. Apr. 15, 2024) (quotation marks omitted) (quoting *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015)); *accord Barkai v. Mendez*, No. 21-CV-4050, 2024 WL 811561, at *23 (S.D.N.Y. Feb. 21, 2024); *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *10 (S.D.N.Y. Sept. 28, 2018). "An inmate bears the burden of showing that 'the protected conduct was a substantial or motivating factor' in the prison officials' disciplinary decision." *Holland v. Goord*, 758 F.3d 215, 225–26 (2d Cir. 2014) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). Additionally, "[t]he Second Circuit has made clear that courts are to 'approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Terry*, 2018 WL 4682784, at *10 (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)); *see also Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (same); *Gunn*, 2024 WL 4124319, at *7 ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." (quoting *Gunn v. Malani*, No. 20-CV-2681, 2023 WL 2664805, at *6 (S.D.N.Y. Mar. 28, 2023))).

There is no dispute as to the first element, as "it is 'well established' that filing inmate grievances is constitutionally protected conduct." *Kotler*, 2022 WL 4589678, at *2; *see also Terry*, 2018 WL 4682784, at *10 ("It is well-established that inmates' filing of grievances is a constitutionally protected exercise of their right under the First Amendment to petition the government for the redress of grievances." (quoting *Mateo v. Bristow*, No. 12-CV-5052, 2013 WL 3863865, at *4 (S.D.N.Y. July 16, 2013))). There is also no dispute as to the third element, a causal connection between the protected speech and the alleged adverse action. (*See generally* Defs' Mem.) Rather, Defendants take aim at the second element and argue that there was no adverse action. (*See id.*) Plaintiff argues that there was adverse action here; specifically, the search of his cell, a false Inmate Misbehavior Report, and Defendants' false testimony at his subsequent disciplinary hearing. (*See generally* Pl's Opp.)

The Court finds that there are genuine disputes of material fact regarding whether Plaintiff suffered an adverse action. Specifically, the Parties dispute the reason for the search of Plaintiff's cell, (*see* Defs' 56.1 Resp. ¶¶ 40–41 (a tip from a confidential informant); *id.* ¶ 36 (a random search); *id.* ¶ 51 (Plaintiff's advocating for other inmates)), whether the broken tweezers would ordinarily result in an inmate misbehavior report, (*see id.* ¶ 39), and whether Defendants provided false testimony at Plaintiff's disciplinary hearing (*see id.* ¶¶ 36, 40–41). "Viewing these actions collectively, a reasonable jury could find that Defendant[s'] conduct was not merely de minimis, but rather would deter a 'similarly situated' prisoner 'of ordinary firmness' from filing prison grievances." *Wright v. Snyder*, No. 21-CV-104, 2023 WL 6379451, at *10 (D. Conn. Sept. 30, 2023) (italics omitted); *see also Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486, 510 (E.D.N.Y. 2011) (denying summary judgment on a First Amendment retaliation claim where the court found that "[p]laintiff ha[d] put forth sufficient evidence of an adverse

12

employment action"); *cf. Kaminski v. Anderson*, 792 F. Supp. 2d 657, 663 (W.D.N.Y. 2011) (in a "close case," finding that, "[v]iewing the record in its totality, and affording the plaintiff the benefit of all reasonable inferences, a jury could conclude that defendants took [adverse] actions that would deter a similarly situated individual of ordinary firmness from exercising [his] constitutional rights"). Defendants argue that Plaintiff's deposition does not, or cannot, form the basis for any disputes of material facts that preclude summary judgment. (*See* Defs' Mem. 10–11.) Not so. Courts faced with dueling testimony draw inferences in the nonmovant's favor. *See Eckhaus v. City of New York*, No. 18-CV-6901, 2023 WL 3179506, at *4 (E.D.N.Y. May 1, 2023). "Unless a plaintiff's testimony is contradictory, incomplete, self-serving, or so replete with inconsistencies that no reasonable jury could credit it, the testimony may be used to create a genuine issue of material fact." *Snowden v. County of Sullivan*, No. 22-CV-514, 2024 WL 4882700, at *6 (S.D.N.Y. Nov. 25, 2024). While Plaintiff's evidence may lack corroboration, and "boil[s] down to a few lines of his testimony," Plaintiff's testimony that Defendants searched his cell, disciplined him for conduct that usually would not warrant discipline, and provided false testimony, "alone, is 'independently sufficient' to give rise to a dispute of material fact." *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, No. 21-CV-695, 2024 WL 4277940, at *11 (S.D.N.Y. Sept. 23, 2024) (citing inter alia *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019), and *Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016)). Accordingly, Plaintiff's "consistent, uncomplicated, and not 'wholly improbable' testimony is 'independently sufficient to raise a genuine issue of material fact.'" *Alcy v. Northwell Health, Inc.*, No. 23-CV-88, 2025 WL 835647, at *10 (S.D.N.Y. Mar. 14, 2025) (quoting *Bellamy*, 914 F.3d at 746).

"Regardless of the presence of retaliatory motive, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper

motivation the alleged retaliatory action would have occurred." *Gunn*, 2024 WL 4124319, at *12 (first alteration omitted, second alteration adopted) (quoting *Scott*, 344 F.3d at 287–88). Defendants assert that, regardless of any alleged retaliatory motive, Plaintiff would have been issued an inmate misbehavior report for having broken tweezers. (*See* Defs' Mem. 13; Defs' Reply 2–3.) The Court concludes that Defendants' argument here fails to carry the day. Defendants point to other cases in which courts have "upheld disciplinary determinations finding incarcerated individuals in possession of a weapon when that weapon is an altered or sharpened tweezer[]," and relevant New York state regulations. (Defs' Reply 2–3.) These cases and Defendants' arguments miss the point. The issue is not whether the tweezers were actually sharpened to a "razor's edge," (*see id.*), but rather whether, "even without the improper motivation[,] the alleged retaliatory action[s] would have occurred." *Gunn*, 2024 WL 4124319, at *12. Plaintiff states that "[he] [has] always asserted . . . that the piece of tweezers at issue would not and should not have resulted in any disciplinary action. (Pl's Suppl. Mem. ¶ 61; *see also* Pl's Dep. Tr. at 48:16–17 (asserting that "[i]t wasn't unusual for inmates to have these tweezers"); *id.* at 63:16–17 (same); *id.* at 61:12–14 (asserting that having broken tweezers "wasn't something that would be so significant that that would be an issue"); *id.* at 116:3–15 (asserting that other DOCCS officers would testify that broken tweezers are "not something that would normally be written up, it's not a weapon of any kind"). Plaintiff's testimony "is a thin reed on which to rest [his] case," but his "consistent, uncomplicated, and not 'wholly improbable' testimony is 'independently sufficient to raise a genuine issue of material fact.'" *Alcy*, 2025 WL 835647, at *10 (quoting *Bellamy*, 914 F.3d at 746); *see also Lara v. Port Auth. of New York and New Jersey*, No. 20-CV-10383, 2023 WL 2185853, at *6 (S.D.N.Y. Feb. 23, 2023) (finding that plaintiff's testimony, "[w]hile admittedly lacking specificity and rather thin,"

14

was nonetheless sufficient to defeat defendant's motion for summary judgment); *Drayton v. City of New York*, No. 17-CV-7091, 2021 WL 1163108, at *2–3 (E.D.N.Y. Mar. 26, 2021) (denying a motion for reconsideration of the court's earlier ruling that plaintiff's deposition testimony raised a triable issue of fact that survived summary judgment). Accordingly, Defendants' argument as to dual motivation does not entitle them to summary judgment.

    2.  Fourteenth Amendment Due Process

"A state prisoner's right to due process is secured by the Fourteenth Amendment, which provides that '[n]o State shall . . . deprive any person of life, liberty, or property without due process of law.'" *Costa v. Kocaqi*, No. 24-CV-1586, 2025 WL 53404, at *4 (D. Conn. Jan. 9, 2025) (quoting U.S. Const. amend. XIV, § 1). While "a 'prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest,'" *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (quoting *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)), there are two exceptions to this rule: when an inmate "is able to show either (1) that he was disciplined without adequate due process as a result of the false report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right." *Leinheiser v. Pilier*, No. 21-CV-1191, 2025 WL 845944, at *4 (S.D.N.Y. Mar. 18, 2025) (alteration adopted) (internal quotation marks omitted) (quoting *Willey*, 801 F.3d at 63).

As discussed above, the Parties dispute whether the Inmate Misbehavior Report was issued in retaliation for Plaintiff's helping other inmates with filing grievances, in violation of Plaintiff's First Amendment right. As this inquiry mirrors exactly the exception to the general rule that a prison inmate has no constitutionally guaranteed immunity from being falsely accused

15

of conduct, the Court finds that disputes of material fact preclude summary judgment on this claim.

### 3. Qualified Immunity

Defendants argue that they are entitled to qualified immunity because, while it is "clearly established that an inmate [has a] right to be free of retaliation for filing grievances," it was objectively reasonable for Defendants to draft the Inmate Misbehavior Report because "Plaintiff possessed an implement that could be used as a weapon and in Defendants' opinion, the weapon warranted the charges include in the . . . report." (Defs' Mem. 19 (internal quotation marks omitted).)

As discussed above, there are disputed issues of fact regarding whether it was objectively reasonable for Defendants to file an inmate misbehavior report regarding the broken pair of tweezers found in Plaintiff's cell. Accordingly, "[b]ecause facts remain in dispute as to the reasonableness of Defendant[s'] belief that [their] conduct did not constitute retaliation, [the Court] cannot conclude that [they] are entitled to qualified immunity as a matter of law." *See Hendricks v. Delutis*, No. 20-CV-1035, 2023 WL 5019171, at *12 (N.D.N.Y. May 9, 2023), *report and recommendation adopted sub nom. Hendriks v. Delutis*, 2023 WL 4740173 (N.D.N.Y. July 24, 2023) (collective cases); *Da Silva v. New York City Transit Auth.*, No. 17-CV-4550, 2025 WL 722967, at *3 (E.D.N.Y. Mar. 6, 2025) (declining to find qualified immunity "as a matter of law because the underlying facts are in dispute"), *appeal pending*, No. 25-727 (2d Cir. Mar. 31, 2025); *Chimelis v. Cnty. of Suffolk*, No. 21-CV-7079, 2025 WL 458242, at *4 (E.D.N.Y. Feb. 11, 2025) (denying summary judgment where fact issues remained as to whether "it was objectively reasonable for an officer to believe that [p]laintiff intended or to cause or recklessly created the risk of causing public harm").

### III.  Conclusion

For the reasons set forth above, Defendants' Motion is denied.  The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 163.  The Court will hold a telephonic status conference on October 1, 2025, at 11:30 AM.  Dial-in information can be found in the Court's Individual Rules of Practice located on the Southern District of New York's website.

SO ORDERED.

Dated:   August 29, 2025
          White Plains, New York

                                      KENNETH M. KARAS
                                      United States District Judge